UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

RUSSELL ROAD FOOD AND BEVERAGE, LLC, a Nevada limited liability company,

   Plaintiff,

v.

FRANK SPENCER, an individual; CRAZY HORSE CONSULTING, INC., an Ohio corporation; and DOES 1-50, inclusive,

   Defendants.

FRANK SPENCER, an individual; CRAZY HORSE CONSULTING, INC., an Ohio corporation,

   Counter-claimants,

v.

RUSSELL ROAD FOOD AND BEVERAGE, LLC, a Nevada limited liability company,

   Counter-defendant.

2:12-CV-01514-LRH-GWF

ORDER

   This is a trademark dispute. Before the court is defendants Frank Spencer and Crazy Horse Consulting, Inc.'s ("CHC's") Motion for Preliminary Injunction (#14[1]). Plaintiff Russell Road

---

[1] Refers to court's docket entry number.

Food and Beverage LLC ("Russell Road") has responded (#19), and Spencer and CHC have replied (#23).

## I. Facts and Procedural History

Both defendant Spencer and plaintiff Russell Road run strip clubs featuring nude female dancing.[2] Spencer's Ohio strip clubs are called "Crazy Horse Cleveland," "Crazy Horse Men's Club," and "Platinum Horse Brook Park." (Spencer Decl. #16, ¶ 6.) Spencer has continuously operated Ohio strip clubs under the Crazy Horse name since 1978. (*Id.* at ¶ 4.) Russell Road's Las Vegas, Nevada strip club is called "Crazy Horse III." (Sostilio Decl. #19-1, ¶ 2.) Russell Road first used this name in 2009. (*Id.*)

In 2004, Carl Reid–yet another owner of a Crazy Horse strip club, this time in South Carolina–applied for and received federal registration of the Crazy Horse mark for "exotic dance performances." (Spencer Decl. #16 at Ex. F.) In December 2010, Reid assigned the Crazy Horse mark to the fourth and final Crazy Horseman, Spencer's wholly owned licensing entity CHC. (*Id.*)

Following the assignment of the mark, Spencer and CHC engaged in licensing negotiations with Russell Road. (Lenson Decl. #19-2, ¶¶ 2-3.) When these negotiations went nowhere, Russell Road brought a declaratory action for non-infringement of Spencer and CHC's Crazy Horse mark. (Compl. #1, pp. 10-12.) About two months later, Spencer and CHC filed the instant Motion for Preliminary Injunction.

//
//

---

[2] Courts have alternatively referred to these businesses as "nude dancing establishments," "gentlemen's clubs," and "exotic entertainment" establishments. *See, e.g.*, *City of Erie v. Pap's A.M.*, 529 U.S. 277, 283 (2000). The court here follows the conventions of Circuit authority in adopting the term "strip club." *See, e.g.*, *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1097 (9th Cir. 2008).

## II. Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008). The plaintiff must establish: (1) likelihood of success on the merits of his complaint; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities favors an injunction; and (4) an injunction is in the public's interest. *Id.* at 20. Additionally, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Requests for injunctive relief that alter the status quo or "provide the movant with substantially all the relief sought" are subject to heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 32-33 (2d Cir. 1995).

## III. Discussion

Spencer and CHC's motion for preliminary injunction cannot clear the high hurdle imposed by *Winter*. In particular, Spencer and CHC have not established the likelihood of success on the merits or the likelihood of irreparable harm.

### A. Likelihood of Success

To prevail on a claim of trademark infringement under the Lanham Act, the movant must establish that he is "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Herb Reed Enterprises, Inc. v. Monroe Powell's Platters, LLC*, 842 F. Supp. 2d 1282, 1288 (D. Nev. 2012) (quoting *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007)); *see also Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1144-45 (9th Cir. 2011).

//

//

Spencer and CHC are unlikely to prevail on the confusion prong of the infringement claim.[3] Courts consider an eight-factor test for determining likelihood of consumer confusion: (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). "In essence, the test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *M2 Software, Inc., v. Madacy Entertainment*, 421 F.3d 1073, 1080 (9th Cir.2005).

Even where the *Sleekcraft* factors weigh in favor of the movant, however, territorial divisions may prevent confusion. An unauthorized junior mark user (like Russell Road) can contest likelihood of confusion by arguing that, since "the registrant and the unauthorized user are confined to two sufficiently distinct and geographically separate markets," there is no likelihood of confusion. *Dawn Donut Co., Inc. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 364 (2d Cir. 1959). Under the *Dawn Donut* rule, a "federal registrant cannot enjoin a local junior user until a likelihood of the registrant's expansion into that area is proven." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 26.31 (4th ed. 2012). The *Dawn Donut* rule has been recognized in this Circuit. *See Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 844 (9th Cir. 1969) (citing *Dawn Donut*).

Here, The *Sleekcraft* factors weigh in favor of Spencer and CHC. Russell Road uses a similar mark for similar services, and, were Spencer's clubs located in Las Vegas, the likelihood of

---

[3] Russell Road also contests Spencer and CHC's exclusive ownership of the right to use the Crazy Horse mark. This argument mostly revolves around a consent agreement signed the day before Russell Road brought its declaratory action. The parties have not fully briefed this issue, and the court need not reach it in order to rule on the motion for preliminary injunction.

4

confusing consumers would be high. The likelihood of confusion inquiry, then, turns on Russell Road's *Dawn Donut* defense. First, Russell Road contends that its use of the Crazy Horse mark in Las Vegas is "sufficiently . . . geographically separate" from Spencer and CHC's use in Ohio (and possibly in South Carolina). Second, Russell Road argues that Spencer and CHC have not proven a likelihood of expansion into Las Vegas–that Las Vegas remains a one Crazy Horse town. Spencer and CHC respond that their representatives have traveled to Las Vegas, consulted real estate agents, organized investor meetings, and attempted to establish relationships with local club owners. (Shea Spencer Decl. #24, ¶¶ 2-3.)

The question is therefore whether Spencer and CHC's activities are sufficient to prove likelihood of expansion, since "if the registrant is likely to enter the junior user's area, then there will be the requisite likelihood of confusion, and the junior non-registrant must give way." 5 J. Thomas McCarthy, *supra*, § 26:33. The court finds that Spencer and CHC have not demonstrated a likelihood of expansion concrete enough to establish likelihood of confusion and therefore infringement. "'Likelihood of entry' denotes an immediate, impending entry of the federal registrant into the junior user's territory." *Id*. For instance, a federal registrant may prove that it has leased premises and is ready to begin sales, or that it has licensed the mark for the disputed territory. *Id*. § 26:34. Spencer and CHC have not advanced any evidence of this type. And while the investigation of sites established likelihood of expansion in *Fotomat Corp. v. Cochran*, 437 F. Supp. 1231 (D. Kan. 1977), there the federal registrant was located in a neighboring town and it had established a reputation in the prospective city. Here, in contrast, there is no indication that Spencer and CHC's Ohio clubs have established a reputation in Las Vegas. Finally, geographic separation is especially important where service marks (like Crazy Horse) are at issue. *See Brennan's, Inc. v. Brennan's Restaurant, LLC*, 360 F.3d 125, 134-35 (2d Cir. 2004) ("[P]laintiff faces a high hurdle to demonstrate that a single restaurant in New Orleans and a single restaurant in

//

//

New York City compete for the same customers.").[4]

Courts search for bona fide likelihood of expansion evidence in part because they are wary of trademark licensing shakedowns. A remote federal registrant should not be able to hold the threat of injunction over a junior user in order to extract licensing fees where the registrant has no actual intent of expanding into the junior user's market. This is especially true where the junior user has a more desirable business than the senior user. Here, Spencer and CHC's motion for preliminary injunction followed Russell Road's complaint, suggesting that Spencer and CHC did not incubate an "immediate, impending entry" into Russell Road's market until after Russell Road filed its suit.[5] The only documented evidence of Spencer's representatives' trip to Las Vegas is a trip beginning August 29, 2012–several days after Russell Road filed suit. (Shea Spencer Decl. #24, ¶ 2.) Furthermore, the evidence indicates that Russell Road's Crazy Horse is a destination in itself, regularly hosting adult entertainment celebrities and providing "premium" packages that top out at over $22,000. (Sostilio Decl. #19-1 at ¶¶ 5-6.) In contrast, Spencer's clubs offer less of a spectacle at a lower price. (*See* Russell Road's Response #19 at Ex. V.) And, of course, Russell Road's Crazy Horse is located in Las Vegas, "one of the country's most popular tourist destinations," frequented by "bachelor party-goers" and "sophisticated connoisseurs of exotic dance" alike. (Mot. for Prelim. Inj. #14 at p. 14:6-10.) The same cannot be said, this court is confident, about Ohio.

Where a less well-known federal registrant seeks to expand into the market of a more well-known junior user, more than talk is necessary to demonstrate a "strong probability" of expansion. *See In re Beatrice Foods Co.*, 429 F.2d 466, 475 (C.C.P.A. 1970). Spencer and CHC have not met

---

[4] Spencer and CHC's reliance on *JL Beverage Co., LLC v. Beam, Inc.*, — F. Supp. 2d — (D. Nev. 2012) is therefore misplaced. Marks on goods, as in *JL Beverage*, may freely travel in the stream of commerce. Service marks are often more constrained in their territorial ranging.

[5] Spencer and CHC insist they were blindsided by Russell Road's suit since licensing negotiations were ongoing. As discussed more fully below, it appears that licensing negotiations fell through much earlier than August 2012, when Russell Road filed its suit.

this threshold yet. Therefore, their infringement claim must be put out to pasture.

### B. Irreparable Harm

Spencer and CHC have also failed to make a convincing showing as to irreparable harm. Harm is "irreparable" for the purposes of a preliminary injunction if it cannot be redressed by a legal remedy *or* an equitable remedy following trial. *See Los Angeles Memorial Coliseum Commission v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980) (holding that purely monetary harm is insufficient to support a finding of irreparable harm). Moreover, it is unlikely that trademark infringement gives rise to a presumption of irreparable harm in light of the Supreme Court's opinion in *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). There, the Court held that proof of patent infringement does not raise a presumption of irreparable harm, 547 U.S. at 394, and the Ninth Circuit has extended this reasoning to copyright infringement, *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011). A similar logic applies to trademark claims. *See Herb Reed*, 842 F. Supp. 2d at 1290-91.

Spencer and CHC allege irreparable harm to their reputation and good will, but Russell Road raises a persuasive defense: Spencer and CHC have unnecessarily delayed their preliminary injunction motion. A long delay between discovery of infringement and the preliminary injunction motion may undercut the sense of urgency associated with irreparable injury. *See Oakland Tribune, Inc., v. Chronicle Publishing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). "Long" is somewhere between three months and one year, though, of course, different factual circumstances give rise to different judgments. *See generally* Sandra Edelman, *Delay in Filing Preliminary Injunction Motions: 2009 Edition*, 99 Trademark Rep. 1074 (2009). Furthermore, such delays may "be excused by the standard explanations," such as licensing negotiations. 6 McCarthy, *supra*, § 31:32.

In order to establish this delay, however, it is necessary to reconstruct the timeline of the licensing negotiations. Spencer first contacted Russell Road regarding trademark infringement in August 2011. (Lenson Decl. #19-1, ¶¶ 2-3.) The parties exchanged emails in February 2012, (Spencer Decl. #25 at ¶ 6), but by April 2012 Spencer had heard from Russell Road for the last

time (*Id*. at ¶ 7). This final communication from Russell Road had proposed a consent agreement "without monetary exchange," and it had warned that Russell Road would "take appropriate action to protect its rights" in the absence of a "favorable response" to this proposal. (Russell Road's Response #19 at Ex. T.) But Spencer did not tender a favorable response in a May 2012 letter. (*Id*. at Ex. U.) At that point, the horse was out of the barn, and Russell Road filed suit three months later. The preliminary injunction followed about two months after that.

Spencer and CHC deny that they delayed their motion for preliminary injunction unnecessarily. Even by their own accounts, however, it is disingenuous to claim that Russell Road filed its declaratory action "[i]n the midst of [ ] licensing negotiations." (Spencer and CHC's Reply #23, p. 4:21.) Rather, any hope for a licensing agreement was dead in May 2012. This puts the delay between the end of negotiations and the filing of the instant motion at five months. Such a moderate delay does not itself undercut Spencer and CHC's claims of irreparable harm. However, the preliminary injunction appears to have been filed in response to Russell Road's declaratory action. (*Id*. at p. 4:21-25.) This suggests that the preliminary injunction is more a litigation strategy than a device to protect against harms not redressable by standard means. Coupled with the five month delay following the breakdown in negotiations, the timing of Spencer and CHC's motion negates their claim of irreparable harm.

### C. Balance of Hardships

The balance of hardships tips in favor of Russell Road, even if the harm Russell Road suffers under an injunction is "discounted by the fact that [Russell Road] brought that injury upon itself." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 596 (3d Cir. 2002). First, Russell Road will have to spend significant amounts in rebranding, possibly even closing for a time.[6] Spencer and CHC, having no presence in Las Vegas, are not similarly burdened by the lack of an injunction.

---

[6] Though the court has grave doubts that these costs reach $23 million, as alleged by Russell Road.

8

Second, a preliminary injunction here would alter, rather than preserve, the status quo, and it would do so at Russell Road's expense. The "basic function of a preliminary injunction is to preserve the status quo pending a determination on the merits." *Department of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006). The status quo is the "last uncontested status that preceded the parties' controversy"–the period before infringement. *Id*. However, if the status quo is the period prior to the alleged infringement, and if (following *Dawn Donut*) infringement arises when Spencer and CHC allegedly demonstrated a probability of expanding into the Las Vegas market, the status quo is the period before Spencer and CHC demonstrated such a probability. But during this period, Russell Road used the Crazy Horse mark without any likelihood of confusing consumers. Therefore, Spencer and CHC's requested preliminary injunction both alters the status quo and alters it without a trademark justification. This is the opposite of how a preliminary injunction should work; in other words, it puts the cart before the horse.

### D. The Public Interest

Here, the public interest favors neither party since the injunction's reach is narrow and affects only the litigants. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).

## IV. Conclusion

For the foregoing reasons, the court determines that a preliminary injunction is not warranted at this time.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Preliminary Injunction (#14) is DENIED.

IT IS SO ORDERED.

DATED this 28th day of January, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE