LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.
KALEB ANDERSON, ESQ.
Nevada Bar No. 7582
9900 Covington Cross Dr., Suite 120
Las Vegas, NV 89144
(702) 382-1500 phone
(702) 382-1512 fax
kanderson@lipsonneilson.com

JOHN P. SUSANY, ESQ.
HAROLD M. SCHWARZ, III, ESQ.
STARK & KNOLL CO., L.P.A.
3475 Ridgewood Rd.
Akron, Ohio 44333
(330) 572-1316 phone
(330) 572-1255 fax
jsusany@stark-knoll.com
hschwarz@stark-knoll.com
Admitted *Pro Hac Vice*

JAY MOLDOVANYI, ESQ.
FAY SHARPE, L.L.P.
The Halle Building, 5th Floor
1228 Euclid Ave.
Cleveland, Ohio 44115
(216) 363-9000
(216) 363-9001 – fax
jmoldovanyi@faysharpe.com
Admitted *Pro Hac Vice*

Attorneys for Defendants/Counterclaimants
Frank B. Spencer and Crazy Horse
Consulting, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RUSSELL ROAD FOOD AND BEVERAGE, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>FRANK SPENCER, an individual; CRAZY HORSE CONSULTING, INC., an Ohio corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: 2:12-cv-1514-LRH-GWF<br><br>NOTICE OF APPEAL |

*Left margin vertical text:* Lipson, Neilson, Cole, Seltzer & Garin, P.C.
9900 Covington Cross Dr., Suite 120
Las Vegas, NV 89144
(702) 382-1500

Lipson, Neilson, Cole, Seltzer & Garin, P.C.
9900 Covington Cross Dr., Suite 120
Las Vegas, NV 89144
(702) 382-1500

1   FRANK SPENCER, an individual; CRAZY        )
2   HORSE CONSULTING, INC., an Ohio            )
    corporation; and DOES 1-50, inclusive,     )
3                                              )
                Counter-Claimants,             )
4                                              )
    v.                                         )
5                                              )
    RUSSELL ROAD FOOD AND BEVERAGE,            )
6   LLC, a Nevada limited liability company    )
                                               )
7   _____  )
                CounterDefendant.              )

8                          NOTICE OF APPEAL

9          Notice is hereby given that Frank Spencer and Crazy Horse Consulting, Inc.,

10  Defendants/Counterclaimants in the above-named case, hereby appeal to the United States

11  Court of Appeals for the Ninth Circuit from the Order granting Plaintiff's motion for summary

12  judgment (document 59) entered in this action on the 6th day of May, 2014.  A true and

13  accurate copy of the Order is attached as Exhibit A.

14         In accordance with Circuit Rule 3-2 of the Federal Rules of Appellate Procedure, Frank

15  Spencer and Crazy Horse Consulting, Inc.'s Representation Statement is attached as Exhibit

16  B.

17         Dated this 5th day of June, 2014.

18                              LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.

19

20                              By: _____
                                KALEB ANDERSON, ESQ.
21                              9900 Covington Cross Dr., Suite 120
                                Las Vegas, NV 89148
22
                                JOHN P. SUSANY, ESQ.
23                              HAROLD M. SCHWARZ, III, ESQ.
                                3475 Ridgewood Rd.
24                              Akron, Ohio 44333
                                Admitted *Pro Hac Vice*
25
                                JAY MOLDOVANYI, ESQ.
26                              1228 Euclid Ave. 5th Floor
                                Cleveland, Oh 44115
27                              Admitted *Pro Hac Vice*

28                              Attorneys for Defendants/Counterclaimants Frank B.
                                Spencer and Crazy Horse Consulting, Inc.

                                        2

Lipson, Neilson, Cole, Seltzer & Garin, P.C.
9900 Covington Cross Dr., Suite 120
Las Vegas, NV 89144
(702) 382-1500

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that on the ___5___ day of June, 2014, I electronically transmitted the foregoing **NOTICE OF APPEAL** to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Bruno W. Tarabichi, Esq.
Owens Tarabichi, LLP
111 N. Market St.
Suite 730
San Jose, CA 95113
Attorneys for Plaintiff

Puoy K. Premsrirut, Esq.
Brown Brown & Premsrirut
520 S. Fourth St.
Second Floor
Las Vegas, NV 89101
Attorneys for Plaintiff

An Employee of Lipson Neilson Cole
Seltzer & Garin, P.C.

# EXHIBIT A

# EXHIBIT A

## REPRESENTATION STATEMENT

Pursuant to Circuit Rule 3-2 of the Federal Rules of Appellate Procedure, Frank Spencer and Crazy Horse Consulting, Inc. hereby identify all parties to the action along with the names, addresses and telephone numbers of their respective counsel, if any, as follows:

| | |
|---|---|
| Appellants: | Frank Spencer<br>Crazy Horse Consulting, Inc. |
| Appellants' Counsel: | Kaleb Anderson, Esq.<br>LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C<br>9900 Covington Cross Dr., Suite 120<br>Las Vegas, NV 89144<br>(702) 382-1500 |
| | John Susany, Esq.<br>Harold M. Schwarz, III, Esq.<br>STARK & KNOLL CO., L.P.A.<br>3475 Ridgewood Rd.<br>Akron, Ohio 44333<br>(330) 572-1316<br>Admitted *Pro Hac Vice* |
| | Jay Moldovanyi, Esq.<br>FAY SHARPE, L.L.P.<br>1228 Euclid Ave. 5th Floor<br>Cleveland, Ohio 44115<br>(216) 363-9000<br>Admitted *Pro Hac Vice* |
| Plaintiff/Counter Defendant: | Russell Road Food and Beverage, LLC |

///
///
///
///
///
///
///
///
///

Lipson, Neilson, Cole, Seltzer & Garin, P.C.
9900 Covington Cross Dr., Suite 120
Las Vegas, NV 89144
(702) 382-1500

Plaintiff/Counter Defendant's Counsel:

Puoy K. Premsrirut, Esq.
Brown Brown & Premsrirut
520 S. Fourth St.
Second Floor
Las Vegas, NV 89101
(702) 384-5563

Bruno W. Tarabichi, Esq.
Owens Tarabichi, LLP
111 N. Market St.
Suite 730
San Jose, CA 95113
(408) 298-8200

Dated this 5th day of June, 2014.

LIPSON, NEILSON, COLE, SELTZER & GARIN, P.C.

By: _____
KALEB ANDERSON, ESQ.
Nevada Bar No.: 7582
9900 Covington Cross Dr., Suite 120
Las Vegas, NV 89148

JOHN P. SUSANY, ESQ.
HAROLD M. SCHWARZ, III, ESQ.
STARK & KNOLL CO., L.P.A.
3475 Ridgewood Rd.
Akron, Ohio 44333
Admitted *Pro Hac Vice*

JAY MOLDOVANYI, ESQ.
FAY SHARPE LLP
1228 Euclid Ave. 5th Floor
Cleveland, Oh 44115
Admitted *Pro Hac Vice*

Attorneys for Defendants/Counterclaimants Frank B. Spencer and Crazy Horse Consulting, Inc.

Lipson, Neilson, Cole, Seltzer & Garin, P.C.
9900 Covington Cross Dr., Suite 120
Las Vegas, NV 89144
(702) 382-1500

# EXHIBIT B

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| RUSSELL ROAD FOOD AND BEVERAGE, LLC, a Nevada limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK SPENCER, an individual; CRAZY HORSE CONSULTING, INC., an Ohio corporation; and DOES 1 – 50, inclusive,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:12-CV-01514-LRH-GWF<br><br>ORDER |

Before the Court is Plaintiff Russell Road Food and Beverage, LLC's ("Russell Road") Motion for Summary Judgment.  Doc. #45.[1]  Defendants Frank Spencer ("Spencer") and Crazy Horse Consulting, Inc. ("CHC") (collectively "Defendants") filed a Response (Doc. #47), to which Russell Road replied (Doc. #49).

I.      **Factual Background**

This is a trademark dispute.  Defendants claim to own trademark rights to the CRAZY HORSE mark and assert that Russell Road's use of its CRAZY HORSE III mark infringes on these rights.  On the other hand, Russell Road asserts that a co-existence and consent agreement between Russell Road and Defendants entitles it to use the CRAZY HORSE III mark and, thus, Defendants are contractually prohibited from asserting trademark claims against Russell Road for its use of the

---

[1] Refers to the Court's docket number.

1   CRAZY HORSE III mark. Russell Road filed this lawsuit in an effort to obtain declaratory relief

2   of non-infringement of the CRAZY HORSE trademark.

3         **A.**      **History of the Crazy Horse Trademark**

4         Presently, both Spencer and Russell Road operate strip clubs featuring nude female

5   dancing.[2] Spencer's Ohio strip clubs are called "Crazy Horse Cleveland," "Crazy Horse Men's

6   Club," and "Platinum Horse Brook Park." Spencer Decl., Doc. #16, ¶ 6. Spencer has continuously

7   operated Ohio strip clubs under the Crazy Horse name since 1978. *Id.* at ¶ 4. Russell Road's Las

8   Vegas, Nevada strip club is called "Crazy Horse III." Sostilio Decl., Doc. #19-1, ¶ 2. Russell Road

9   first used this name in 2009. *Id.* In 2006, Carl Reid ("Reid")—yet another owner of a Crazy Horse

10  strip club, this time in South Carolina—applied for and received federal registration of the Crazy

11  Horse trademark for "exotic dance performances." Spencer Decl., Doc. #16, Ex. F. Thereafter,

12  Reid also registered the PURE GOLD'S CRAZY HORSE trademark. *Id.*, Ex. J.

13        **B.**      **Assignment of Trademark Co-Existence Agreement to Russell Road**

14        In 2009, a Nevada company called Crazy Horse Too A Gentleman's Club ("CHTAGC")

15  and Reid became involved in administrative litigation before the United States Patent and

16  Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB"). CHTAGC

17  resolved their dispute by entering into a Trademark Co-Existence Agreement (hereinafter "Consent

18  Agreement") on September 16, 2009.[3] Tarabichi Decl., Doc. #45-1, Ex. B. The Consent

19  _____

20      [2] Courts have alternatively referred to these businesses as "nude dancing establishments,"
    "gentlemen's clubs," and "exotic entertainment" establishments. *See, e.g., City of Erie v. Pap's A.M.*,
21  529 U.S. 277, 283 (2000). The Court here follows the conventions of Circuit authority in adopting the
    term "strip club." *See, e.g., E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095,
22  1097 (9th Cir. 2008).

23      [3] To the extent Defendants contend that no good will was transferred with the rights supposedly
24  granted to CHTAGC by the Consent Agreement, that CHTAGC never acquired any tangible or
    intangible goods of the unrelated club Crazy Horse Too or of Reid's business, that CHTAGC never
25  used any "Crazy Horse" mark in connection with the operation of any business, that CHTAGC
    abandoned the only trademark registration it attempted pursuant to the Consent Agreement, and that
26  CHTAGC is a defunct corporation (Doc. #47, pp. 12-13), the Court finds these allegedly disputed facts

1    Agreement specifically provides the following:

2          Mr. Reid consents to [CHTAGC's] use and registration of the CRAZY HORSE
            TOO GENTLEMEN'S CLUB mark in standard characters, . . . , and any mark that
3          includes the phrase CRAZY HORSE provided the mark does not contain the phrase
            PURE GOLD'S, the terms PURE or GOLD'S, or any phrase or term confusingly
4          similar to PURE GOLD'S. Mr. Reid further agrees not to oppose, petition to cancel,
            or otherwise interfere with [CHTAGC'S] use and registration of such marks.

5

6    *Id.* Additionally, CHTAGC and Reid agreed that the Consent Agreement would be binding on

7    their successors, assigns, and licensees:

8          This Agreement shall be binding upon and shall inure to the benefit of the parties
            hereto, their respective successors, assigns and licensees, and any corporation which
9          owns or controls or is owned or controlled by any party or with which any party has
            common ownership or control.

10

11   *Id.* On August 16, 2012, CHTAGC assigned all of its rights, title, and interest in and to the

12   Consent Agreement to Russell Road.[4]  Tarabichi Decl., Doc. #45-1, Ex. E.  Pursuant to the terms of

13   the Assignment of Trademark Co-Existence Agreement (hereinafter "Assignment Agreement"),

14   CHTAGC and Russell Road agreed that "[CHTAGC] shall assign all of [its] rights, title, and

15   interest in and to the [Consent Agreement] . . . ." *Id.*

16          C.    **Assignment of Trademark to CHC**

17          On December 10, 2010, Reid assigned the CRAZY HORSE trademark to Spencer's wholly

18   owned licensing entity CHC.  Spencer Decl., Doc. #16, Ex. F.  Spencer paid $10,000 to Reid for

19   the assignment.  Tarabichi Decl., Doc. #45-1, Ex. D, No. 57.  At the time, Spencer was aware of the

20

21   to be immaterial to a determination of the present Motion for Summary Judgment.

22          [4]   Defendants assert that Russell Road offers no evidence of any consideration paid or
23   transferred to CHTAGC in exchange for the assignment of the Consent Agreement. *See* Doc. #47, p.
     12.  Thereafter, Russell Road submitted evidence that it paid CHTAGC $2,500 in exchange for the
24   Consent Agreement assignment.  Salvador Decl., Doc. #49-1, ¶4; Lenson Decl, Doc. #49-2, ¶3.
     Defendants do not appear to contest this evidence of consideration.  To the extent Defendants assert
25   that no good will was transferred with the rights supposedly granted to Russell Road under the Consent
26   Agreement, the Court finds this allegedly disputed fact to be immaterial to a determination of the
     present Motion for Summary Judgment.

3

1    Consent Agreement between CHTAGC and Reid.  Tarabichi Decl., Doc. #45-1, Ex. D, Nos. 13 &

2    14.  The Trademark Assignment provided the following:

3            WHEREAS [Reid] . . . is the owner of record of the entire right, title and interest in
             and to the U.S. trademark registration identified in Exhibit A hereto, which is made
4            a part hereof, and of the goodwill of the business connected therewith; and

5            . . .

6            . . . Reid does hereby sell, assign and transfer unto CHC, the entire right, title and
             interest in and to the trademark registration identified in Exhibit A and to any and all
7            renewals thereof, together with the goodwill of the business connected with the use
             of and symbolized by said trademark and registration thereof, including without
8            limiting the generality of the foregoing, the right to all claims that [Reid] may have
             for damages for past infringement of the U.S. trademark registration identified in
9            Exhibit A hereto and the right to sue and collect such damages, all said rights to be
             held and enjoyed by CHC for its own use and enjoyment and for the use and
10           enjoyment of his successors as fully and entirely as the same would have been held
             by [Reid] had this assignment not been made.
11

12   *Id.* Following the assignment of the CRAZY HORSE trademark, Defendants engaged in licensing

13   negotiations with Russell Road.  Lenson Decl., Doc. #19-2, ¶¶ 2-3.  When these negotiations went

14   nowhere, Russell Road brought the present declaratory action for non-infringement of Defendant's

15   CRAZY HORSE trademark.  Doc. #1, pp. 10-12.

16   **II.    Legal Standard**

17           Summary judgment is appropriate only when the pleadings, depositions, answers to

18   interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record

19   show that "there is no genuine issue as to any material fact and the movant is entitled to judgment

20   as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the

21   evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the

22   light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

23   *Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154

24   (9th Cir. 2001).

25           The moving party bears the initial burden of informing the court of the basis for its motion,

26   along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v.*

4

1    *Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the

2    moving party must make a showing that is "sufficient for the court to hold that no reasonable trier

3    of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259

4    (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

5    On an issue as to which the non-moving party has the burden of proof, however, the moving party

6    can prevail merely by demonstrating that there is an absence of evidence to support an essential

7    element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

8         To successfully rebut a motion for summary judgment, the non-moving party must point to

9    facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.*

10   *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might

11   affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

12   242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary

13   judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute

14   regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could

15   return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a

16   scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute;

17   there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

18   **III.    Discussion**

19        Here, the undisputed material facts, as set forth above, demonstrate that Russell Road is

20   entitled to summary judgment as a matter of law on its first claim for declaratory judgment of non-

21   infringement.  Defendants—as the assignees of the CRAZY HORSE trademark—are bound by the

22   Consent Agreement, which was executed by Reid and CHTAGC and then later assigned to Russell

23   Road. Defendants dispute the validity of the Consent Agreement between Reid and CHTAGC.

24   Nevertheless, Defendants' arguments are premised on the misplaced notion that the Consent

25   Agreement contemplated an assignment of trademark ownership rights.  Specifically, Defendants

26   assert that the Consent Agreement is invalid because (1) no good will was transferred with the

5

1    rights supposedly granted to CHTAGC by the Consent Agreement, (2) CHTAGC never acquired

2    any tangible or intangible goods of the unrelated club Crazy Horse Too or of Reid's business, and

3    (3) CHTAGC abandoned the trademark rights it acquired by virtue of the Consent Agreement

4    because it never used any "Crazy Horse" mark in connection with the operation of any business and

5    because it abandoned the only trademark registration it attempted pursuant to the Consent

6    Agreement. *See* Doc. #47, pp. 12-13.

7         Defendants misunderstand the nature of the Consent Agreement. Consent agreements, or

8    co-existence agreements, are contracts whereby a trademark owner consents to another party's

9    defined usage of a mark. *See* 3 McCarthy on Trademarks and Unfair Competition § 18:79 (4th ed.

10    2014); *see also Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 365 (5th Cir. 2004)

11    ("[i]n the usual case, a consent-to-use agreement contemplates that there will be no marketplace

12    confusion as long as the consentee's uses are confined in accordance with the contract"); *Croton*

13    *Watch Co. v. Laughlin*, 208 F.2d 93, 96 (2d Cir. 1953) (an admission that there is no confusion is

14    implicit in a consent agreement even where not expressly stated).[5] So long as the parties are using

15    the mark in a manner permitted by the consent agreement, the trademark owner is contractually

16    prohibited from asserting trademark infringement. *Brennan's*, 376 F.3d at 364-68. Moreover, a

17    consent agreement is distinguishable from an assignment because "neither party is assigning any

18    rights of ownership in their mark to the other." McCarthy at § 18:79.

19         Accordingly, Defendants' arguments that CHTAGC abandoned the rights it acquired by

20    virtue of the Consent Agreement, if any, are completely inapposite. The Consent Agreement did

21    not purport to assign any rights of ownership in the CRAZY HORSE mark to CHTAGC. Rather, it

22    was a contract whereby Reid consented to a defined usage of the CRAZY HORSE mark.

23    _____

24      [5] The Consent Agreement expressly contemplates that there will be no confusion. *See*

25    Tarabichi Decl., Doc. #45-1, Ex. B ("The parties agree to cooperate and to take such reasonable steps
as may be mutually agreeable for the purpose of avoiding any likelihood of confusion. Should the

26    parties become aware of any actual confusion among the purchasing public, they shall cooperate and
take reasonable measures to prevent further confusion.").

6

1   Defendants do not dispute that Russell Road's use of the CRAZY HORSE III design mark is

2   permitted by the terms of the Consent Agreement.  Moreover, the plain language of the Consent

3   Agreement provides that CHTAGC and its assigns may *use* or register *"any mark* that includes the

4   phrase CRAZY HORSE provided the mark does not contain the phrase PURE GOLD'S, the terms

5   PURE or GOLD'S, or any phrase or term confusingly similar to PURE GOLD'S."  CRAZY

6   HORSE III does not contain the phrase PURE GOLD'S, the terms PURE or GOLD'S, or any

7   phrase or term confusingly similar to PURE GOLD'S.  Finally, nothing in the Consent Agreement

8   requires that CHTAGC or its assigns register permissible marks in order to use them.  As such, the

9   fact that the USPTO rejected Russell Road's applications for variants of the CRAZY HORSE III

10  mark has no bearing on whether Russell Road had permission under the Consent Agreement to use

11  that mark without interference from Reid or his assigns.

12         Similarly, Defendants dispute that CHTAGC's assignment of the Consent Agreement to

13  Russell Road was a valid and enforceable assignment.  Specifically, Defendants assert that

14  CHTAGC's trademark assignment to Russell Road is unenforceable because CHTAGC did not

15  transfer any good will.  Again, Defendants' arguments are premised on the misplaced notion that

16  CHTAGC sought to assign ownership rights in the CRAZY HORSE trademark to Russell Road.

17  However, because CHTAGC did not acquire any ownership rights in the CRAZY HORSE mark, its

18  assignment of the Consent Agreement could not have purported to either.  Instead, CHTACG

19  assigned its contractual right under the Consent Agreement to use the CRAZY HORSE mark in a

20  defined manner to Russell Road.

21         Defendants do not otherwise dispute that the Assignment Agreement is a valid assignment

22  of CHTACG's contractual rights under the Consent Agreement.  Moreover, there is no indication

23  that the Assignment Agreement was otherwise prohibited by law.  *See Easton Bus. Opp. v. Town*

24  *Exec. Suites*, 230 P.3d 827, 830 (Nev. 2010) ("[u]nder the ordinary rules of contract law, a

25  contractual right is assignable unless assignment materially changes the terms of the contract or the

26  contract expressly precludes assignment"); *Rush Beverage Co., Inc. v. So. Beach Beverage Co.*,

7

1    *Inc.*, No. 01 C 5684, 2002 WL 31749188, at *4 (N.D. Ill. Dec. 6, 2002) (enforcing consent

2    agreement where both parties had assigned their rights thereunder). Here, the Consent Agreement

3    does not contain any language prohibiting assignment. In fact, it actually contemplates that the

4    agreement would bind assigns. Nor is there any indication that the Assignment Agreement

5    materially changed the terms of the Consent Agreement. Accordingly, the Court finds that

6    CHTACG's assignment of its rights under the Consent Agreement to Russell Road is valid and

7    enforceable.

8          Finally, Defendants do not dispute that Reid's assignment of the CRAZY HORSE

9    trademark was burdened by the terms of any valid contracts in existence at the time of the

10   assignment, including the Consent Agreement. Moreover, Defendants admit to having notice of

11   the Consent Agreement before they purchased the CRAZY HORSE mark from Reid. Tarabichi

12   Decl., Doc. #45-1, Ex. D, Nos. 13 and 14. Indeed, when a trademark is validly assigned, the

13   assignee steps into the shoes of the assignor. *See Premier Dental Prod. Co. v. Darby Dental*

14   *Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986) ("following a proper assignment [of a trademark], the

15   assignee steps into the shoes of the assignor"). In doing so, the assignee assumes the rights and

16   obligations of the assignor, including those that flow from the terms of any existing consent

17   agreements burdening the trademark. *See Cal. Packing Corp. v. Sun-Maid Raisin Growers of Cal.*,

18   81 F.2d 674, 676 (9th Cir. 1936) (appellee could not convey any right to the use of the trademark

19   which it did not own, and that right had been expressly limited by contract); *see also* McCarthy at §

20   18:15 ("[a]n assignee [of a trademark], by following in the footsteps of the assignor, acquires not

21   only all the favorable rights and priorities of the assignor, but also any burdens and limitations on

22   use that were incumbent on the assignor"). Accordingly, the Court finds that Defendants, as

23   assignees of the CRAZY HORSE trademark, are bound by the Consent Agreement.

24   **IV.    Conclusion**

25         For all of the aforementioned reasons, the Court finds that summary judgment in favor of

26   Russell Road on its first claim for declaratory judgment of non-infringement is appropriate. The

1   Court explicitly finds the following: (1) the Consent Agreement and the Assignment Agreement are

2   valid and enforceable contractual instruments; (2) Defendants—as the assignees of the CRAZY

3   HORSE trademark—are bound by the Consent Agreement that was entered into by Reid and

4   CHTAGC and then later assigned to Russell Road; and (3) The Consent Agreement explicitly

5   permits CHTAGC and its assignee Russell Road to "use and register" its CRAZY HORSE III

6   design mark without interference from Reid and his assignee CHC.  Because the Court's

7   declaration of non-infringement serves to allow Russell Road's continued use of its CRAZY

8   HORSE III mark, Russell Road's remaining claims are dismissed as moot.[6]  Finally, the Court also

9   finds that summary judgment in favor of Russell Road is also appropriate on Defendants'

10  counterclaims, each of which stem from an allegation of infringement.

11       Defendants argue that, to the extent the Court is unpersuaded by their arguments, Russell

12  Road's Motion for Summary Judgment should be stayed or denied due to the unavailability of facts

13  necessary to oppose the Motion.  Nevertheless, Defendants have not met their burden in requesting

14  that the Court stay or deny Russell Road's Motion for Summary Judgment pursuant to Federal Rule

15  of Civil Procedure 56(d). "Under FRCP Rule 56(d), a party requesting additional time to conduct

16  discovery to oppose summary judgment 'must show: (1) it has set forth in affidavit form the

17  specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the

18  sought-after facts are essential to oppose summary judgment.'" *NFBN-RESCON I, LLC v. Ritter*,

19  No. 2:11-CV-01867-GMN-VCF, 2013 WL 3168646, at *1 (D. Nev. June 19, 2013) (quoting

20  *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th

21  Cir.2008)).  If these three requirements are not satisfied, the court may rule on summary judgment

22  without granting additional discovery. *Id.*

23       In support of their request, Defendants insinuate that they need additional discovery and

24  further assert that they have been unable to investigate the validity of the Consent Agreement and

25

26

---

[6] Russell Road consents to the dismissal of its remaining claims. *See* Doc. #45, p. 16.

1  Assignment Agreement because the subpoenas issued to CHTAGC and its owner John Salvador

2  could not be delivered to their last known address.  Nevertheless, Defendants do not identify

3  specific facts they hope to elicit from further discovery.  In similar fashion, Defendants do not

4  assert that the unidentified discovery they seek exists or that it is essential to oppose Russell Road's

5  Motion for Summary Judgment.  Accordingly, Defendants request is denied.

6

7         IT IS THEREFORE ORDERED that Russell Road's Motion for Summary Judgment (Doc.

8  #45) is GRANTED.  The Clerk of Court shall enter judgment in favor of Plaintiff Russell Road,

9  and against Defendants Spencer and CHC as to Russell Road's first cause of action for declaratory

10  judgment and as to all of Defendant's counterclaims in this action.  Russell Road's remaining

11  claims shall be dismissed without prejudice in accordance with this Order.

12         IT IS SO ORDERED.

13         DATED this 6th day of May, 2014.

14

15                                     LARRY R. HICKS
                                   UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

## Kim Glad

| | |
|---|---|
| **From:** | SHANNON NORDSTROM |
| **Sent:** | Friday, May 30, 2014 5:59 PM |
| **To:** | KIM GLAD |
| **Subject:** | Fwd: Meridian Depos - Next Week |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Sent from my iPhone

Begin forwarded message:

> **From:** Steven Shinn <steven@mushlaw.com>
> **Date:** May 30, 2014 at 4:51:02 PM PDT
> **To:** "ljs@semenzalaw.com" <ljs@semenzalaw.com>, SHANNON NORDSTROM
> <SNordstrom@lipsonneilson.com>, "Anthony J. DiRaimondo (adiraimondo@rrsc-law.com)"
> <adiraimondo@rrsc-law.com>, "kholmanlaw@gmail.com" <kholmanlaw@gmail.com>,
> "kbmorgan@morganassociatesplc.com" <kbmorgan@morganassociatesplc.com>
> **Cc:** Michael Mushkin <Michael@mushlaw.com>, "wgamage@gamagelaw.com"
> <wgamage@gamagelaw.com>, 'William Gamage' <kodiak3b@gmail.com>
> **Subject: Meridian Depos - Next Week**
>
> all depos have been rescheduled.  We will be calling all counsel to meet our local rule requirements as
> appropriate.  Unless all parties agree, the discovery deadline still stands except for the depo of the PMK
> of Meridian Private Residences CH who has indicated that he has agreement for an extension for his
> client.  All other depos must be scheduled before the deadline.
>
> Steven M. Shinn, Esq.
> Michael R. Mushkin & Associates
> 4475 S. Pecos Road
> Las Vegas, Nevada  89121
> Tel. No. (702) 386-3999
> Fax No. (702) 454-3333
>
> **IRS CIRCULAR 230 DISCLOSURE:** To ensure compliance with requirements imposed by the IRS, we
> inform you that, to the extent this communication (or any attachment) addresses any tax matter, it was
> not written to be (and may not be) relied upon to (i) avoid tax-related penalties under the Internal
> Revenue Code, or (ii) promote, market or recommend to another party any transaction or matter
> addressed herein (or in any such attachment).
>
> **CONFIDENTIALITY NOTICE:** The information contained in this message may be protected by the
> attorney-client privilege. If you believe that it has been sent to you in error, do not read it. Please
> immediately reply to the sender that you have received the message in error. Then delete it. Thank you.